UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZA A ADDEO, <br><br> Plaintiff, <br><br> v. <br><br> SPECTRUM PAINTING CORP. *et al.*, <br><br> Defendants. | No. 25-CV-5364 (KMK) <br><br> OPINION & ORDER |

Appearances:

Mitchell I. Weingarden, Esq.
Law Offices of Mitchell I. Weingarden, PLLC
White Plains, NY
*Counsel for Plaintiff*

Keith J. Gutstein, Esq.
Matthew E. Cohen, Esq.
Kaufman Dolowich LLP
Woodbury, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Enza Addeo ("Plaintiff") brings this Action against Spectrum Painting Corp

("Spectrum") and Pellegrino Monteforte ("Monteforte"), (collectively, "Defendants"), pursuant

to the Fair Labor Standards Act of 1938 ("FLSA"), Title VII of the Civil Rights Act of 1964

("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of

1973, and the Family and Medical Leave Act ("FMLA").  (*See* Compl. ¶¶ 84–181 (Dkt. No. 5).)

Plaintiff brings additional state-law claims pursuant to the New York Labor Law ("NYLL") and

New York State Executive Law § 296.  (*See* Compl. ¶¶ 109–132.)  Before the Court is the

Parties' joint settlement agreement application pursuant to *Cheeks v. Freeport Pancake House,*

*Inc.*, 796 F.3d 199 (2d Cir. 2015).  (*See* Letter from Matthew Cohen, Esq. to Court (dated Jan. 29, 2026) ("Settlement Agreement Application") (Dkt. No. 27).)  For the following reasons, the Application is denied without prejudice to renewal.

I.  Background

A.  Factual Background

As alleged, Plaintiff was employed by Spectrum as a receptionist and as Monteforte's assistant for approximately six years.  (Compl. ¶ 14.)  Plaintiff alleges that while employed, she performed "personal and business[-]related chores" for Monteforte during and beyond her scheduled working hours.  (*Id.* ¶ 70.)  She alleges that her time records did not reflect time spent performing "chores" outside her normal working hours.  (*Id.* ¶¶ 71, 77.)  Accordingly, she contends Defendants failed to compensate her at her contractual rate, or a lawful minimum hourly wage, for those hours worked.  (*Id.* ¶¶ 152–53.)  Furthermore, Plaintiff alleges that had those hours been included, she would have been entitled to overtime premiums for work completed in excess of 40 hours per week.  (*Id.* ¶ 78.)  Accordingly, she alleges Defendants failed to pay her overtime pay as required by the FLSA.  (*Id.* ¶ 161.)  Plaintiff asserts wage and hour violations, seeking compensatory damages, punitive damages, attorneys' fees, unpaid wages, unpaid overtime, liquidated damages, statutory damages, prejudgment interest, and an injunction against Defendants.[1]  (*Id.* at 25–26.)

---

[1] The Parties have entered into a bifurcated settlement agreement.  (*See* Settlement Agreement Application 1 n.1.)  The settlement agreement before the Court covers only Plaintiff's FLSA claims.  (*Id.*)  Accordingly, the factual background is limited to the facts relevant to Plaintiff's FLSA claims.

B.  Procedural Background

Plaintiff filed her Complaint on June 30, 2025. (*See* Compl.)  Defendants submitted their Answer on September 8, 2025, generally denying all allegations within the Complaint.  (*See* Answer (Dkt. No. 13).)  On September 10, 2025, the Parties were referred to mediation.  (Order (Dkt. 15).)  On December 15, 2025, the Parties informed the Court a settlement had been reached.  (*See* Order (Dkt. No. 23).)  On January 14, 2026, Defendants requested the case be reopened for *Cheeks* review of the forthcoming settlement, (*see* Letter from Matthew Cohen, Esq. to Court (dated Jan. 14, 2026) (Dkt. No. 24)), which the Court granted, (*see* Order (Dkt. No. 25)).  The Parties jointly submitted their proposed settlement for the Court's approval on January 29, 2026.  (Settlement Agreement Application.)[2]

## II.  Discussion

A. Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  Fed. R. Civ. P. 41(a)(1)(A).  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  The Second Circuit has held that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks*, 796 F.3d at 206 (internal quotation marks omitted).  Consequently, "the [P]arties must satisfy the Court that

---

[2] The Settlement Agreement Application is technically the second application filed by the Parties.  The previous application was erroneously submitted without the proposed settlement attached.  (*See* Letter from Matthew Cohen, Esq. to Court (dated Jan. 29, 2026) (Dkt. No. 26).)

their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (substantially same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As multiple courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic

region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the parties must provide the court with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted). To this end, courts require information regarding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (internal quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B.  Analysis

   1.  Good Faith

The Court is satisfied that the Settlement Agreement was negotiated competently, in good faith, and without fraud or collusion. All Parties are represented by counsel. (*See* Settlement Agreement Application 3–4.) In their joint settlement application, the Parties represent the proposed settlement "clearly reflects an arms-length negotiation absent from fraud or collusion and [is] a reasonable compromise over the contested issues in this matter." (*Id.* at 3.) Furthermore, the Parties represent that the settlement was reached during mediation with a court-

appointed mediator.  (*Id.*)  The presence of a mediator helps assure the Court "that the settlement

was not the product of collusion."  *Bilbao v. LCS Enters. Inc.,* 2018 WL 1399199, at *2

(S.D.N.Y. Mar. 19, 2018); *see also Hernandez v. Anjost Corp.*, 2013 WL 4145952, at *2

(S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the

Settlement Agreement is non-collusive.").

        2. Similarly Situated Employees

        The Court is not aware of "the presence of other employees situated similarly to the

claimant," *Wolinsky*, 900 F. Supp. 2d at 336, militating in favor of settlement.  While the Parties

do not speak to the presence of similarly situated employees, courts have noted that the fact that

no other employee has come forward and that Plaintiff would be the only employee affected by

settlement and dismissal are factors that support approval of the proposed settlement.  *See*

*Montes v. Cnty. Comfort Home Sols., Inc.*, No. 23-CV-7579, 2024 WL 5004676, at *4 (S.D.N.Y.

Dec. 6, 2024) (reasoning that both the absence of other employees coming forward, and a

settlement being limited to the plaintiff, each are "factors that support approval of the proposed

settlement"); *see also Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL

7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that

the plaintiff would "be the only employee affected by the settlement and dismissal," and that

these facts supported approval of the proposed settlement);  *Santos v. Yellowstone Props., Inc.*,

No. 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (noting that the fact that

"[n]o other employee ha[d] come forward" supported settlement approval); *Penafiel*, 2015 WL

7736551, at *2 (same).

        Additionally, the Court "is not aware of a [broader] history of FLSA non-compliance by

th[e] employer[s]," nor of any particularly unique legal issues that would "outweigh the benefits

of settlement" here. *Nash v. Countywide Carting, LTD*, No. 19-CV-9138, 2022 WL 602998, at

*3 (S.D.N.Y. Mar. 1, 2022); *see also Ash v. Crossdale*, No. 20-CV-6207, 2021 WL 6550090, at

*2 (W.D.N.Y. Aug. 17, 2021) (substantially same). These facts further weigh in favor of the

settlement.

       3. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will

not approve settlement agreements that contain overly broad release provisions that would

"waive practically any possible claim against the defendants, including unknown claims and

claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quoting *Nights*

*of Cabiria*, 96 F. Supp. 3d at 181, to illustrate "potential for abuse in [FLSA] settlements"); *see*

*also Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *4

(S.D.N.Y. Feb. 3, 2023) ("[R]eleases must generally be limited to wage and hour issues . . . .");

*Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y.

Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision

must be limited to the claims at issue in this action.").

       To that end, releases must generally be limited to wage and hour issues, see *Cheeks*, 796

F.3d at 206, and "may include claims not presented and even those which could not have been

presented, but only when the released conduct arises out of the identical factual predicate as the

settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (footnote and quotation marks

omitted). In light of this standard, "a number of judges in this District refuse to approve any

FLSA settlement unless the release provisions are limited to the claims at issue in this action."

*Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5,

2017) (alteration adopted and quotation marks omitted). Broad releases are problematic in FLSA

proposed settlement agreements in part because "courts have a duty to police unequal bargaining power between employees and employers." *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015).

The Parties' proposed release is not limited to "conduct aris[ing] out of the identical factual predicate as the settled conduct." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (footnote and quotation marks omitted). Instead, the release prevents Plaintiff from "filing any administrative or judicial complaints, charges, lawsuits, claims, demands, or actions of any kind against any of the Releasees relating to *any* alleged FLSA Violations that took place at any time, from the beginning of time until the date this FLSA Agreement was executed by Plaintiff." (Settlement Agreement Application Ex. A. ("Settlement and Release Agreement") ¶ 5 (emphasis added).) Furthermore, the release calls for Plaintiff to acknowledge that "she is owed no further remuneration or accrued benefit time by [Defendants] *whatsoever* pursuant to the FLSA, including, but not limited to any wages, commissions, tips, overtime pay, vacation pay, sick pay, accrued benefits, or bonuses." (*Id.* ¶ 7 (emphasis added).)

This provision is overbroad because it could potentially extinguish FLSA claims that "have no relationship whatsoever to the claims at issue in this case." *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (quoting *Cheeks*, 796 F.3d at 206–07); *accord Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *4 (S.D.N.Y. Oct. 5, 2020). As the provisions are not "expressly limited to the conduct underlying the claims" asserted here, *Zekanovic*, 2020 WL 5894603, at *4, they are impermissibly overbroad. *See, e.g.*, *Castillo v. AVI Food Sys., Inc.*, No. 24-CV-6591, 2025 WL 2945435, at *6 (S.D.N.Y. Oct. 16, 2025) (finding a release that, while limited to claims related to the plaintiff's compensation, could include claims arising from facts unrelated to the conduct at

8

issue was impermissibly overbroad); *Abreu v. Torti Food, Corp.*, No. 20-CV-10643, 2023 WL 5051885, at *3 (S.D.N.Y. July 14, 2023) (finding release clause overbroad in part because it "may include claims unrelated to [the instant] lawsuit"); *Rojas*, 2018 WL 4931540, at *3 ("Although the release provision is limited to FLSA . . . claims, it is not expressly limited only to the conduct underlying the claims in this case."); *Kovalev v. A.G. Consulting Eng'g*, No. 22-CV-5954, 2025 WL 2444156, at *9 (S.D.N.Y. Aug. 25, 2025) ("Courts in this District routinely decline to approve FLSA settlements that release a defendant from liability untethered to the wage and hour claims at issue." (collecting cases)).

As noted, the Settlement Agreement Application before the Court represents one-half of a bifurcated settlement agreement. (*See* Settlement Agreement Application 1 n.1.) The Parties have entered into a "separate Confidential Settlement and General Release Agreement pertaining to all potential claims of Plaintiff other than FLSA claims." (*Id.*) "Precedent confirms that such an approach is permissible." *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 324–25 (S.D.N.Y. 2021); *see Ortiz v. Breadroll, LLC*, No. 16-CV-7998, 2017 WL 2079787, at *2 (S.D.N.Y. May 15, 2017) (observing "authority for a bifurcated settlement agreement," in which the parties submit an FLSA agreement for court review and approval, "but enter into a separate . . . settlement agreement with respect to the counterclaims" (collecting cases)); *Yunda v. SAFI-G*, No. 15-CV-8861, 2017 WL 1608898, at *1–2 (S.D.N.Y. Apr. 28, 2017) (approving the submission of two settlement agreements, one resolving the plaintiff's FLSA claims that required approval under *Cheeks*, and the other resolving the plaintiff's claims that did not require approval under *Cheeks* and that contained a confidentiality clause); *Abrar v. 7-Eleven, Inc.*, No. 14-CV-6315, 2016 WL 1465360, at *1 (E.D.N.Y. Apr. 14, 2016) (approving

a bifurcated settlement structure whereby the parties publicly filed their FLSA settlement

agreement and executed a separate, confidential settlement agreement for non-FLSA claims).

### 4. Fairness and Reasonableness

To assess whether the settlement amounts are fair and reasonable, the Court must

consider the Plaintiff's maximum potential for recovery. *Leonardo v. Reza Fast Food, Inc.*, No.

20-CV-8879, 2022 WL 2440975, at *2 (S.D.N.Y. July 5, 2022) ("When assessing the fairness of

a settlement amount . . . courts . . . consider a maximum possible recovery . . . ." (quotation

marks omitted)).  In the Proposed Settlement Agreement, the Parties propose that Defendants

pay $4,000 to settle Plaintiff's FLSA claims.  (Settlement Agreement Application 2.)  Before

approving a settlement agreement, the Court must have "enough information . . . to examine the

bona fides of the dispute." *Mamni v. Licetti*, No. 13-CV-7002, 2014 WL 2971050, at *1

(S.D.N.Y. July 2, 2014) (quotation marks and citation omitted).

"[I]n the event that the Parties dispute the computation of wages, the Parties must

provide each [P]arty's estimate of the number of hours worked and the applicable wage."

*Sanchez v. Cosan Constr. Corp.*, No. 22-CV-8420, 2026 WL 915307, at *5 (S.D.N.Y. Apr. 3,

2026) (internal quotation marks and citation omitted).  Defendants assert that they "maintained

contemporaneous time records and, according to such time records, during the applicable time

period, Plaintiff averaged only 33.66 hours per week and never worked more than 36.25 hours in

any week."  (Settlement Agreement Application 2.)  The Parties represent that "Plaintiff

calculated her damages in order to assess her best possible recovery," determining "the

maximum amount of wages that . . . can be owed under the FLSA . . . is $2,500.00."  (*Id.*)

Plaintiff has not "provide[d] [her] estimate of the number of hours worked," *Sanchez*, 2026 WL

915307, at *5 (quotation marks omitted), nor has any Party provided "the applicable wage," *id.*

These representations do not constitute "a clear explanation as to how the maximum allowable damages were calculated." *Tapia v. Mount Kisco Bagel Co. Inc.*, No. 18-CV-2864, 2018 WL 4931542, at *3 (S.D.N.Y. Oct. 10, 2018). This information is vital to the Court's task of assessing the sufficiency of the amount awarded. *See, e.g.*, *Montes*, 2024 WL 5004676, at *3 (denying a motion for settlement approval because the parties failed to provide a detailed calculation of the settlement amount); *Zekanovic*, 2020 WL 5894603, at *3 (same); *Gaspar*, 2015 WL 7871036, at *2 (noting that although the court was satisfied with the parties' explanation of the methodology used to generate settlement amounts, the parties failed to submit the "underlying data" to which the methodology was applied (emphasis omitted)).

Additionally, no Party provided "supporting declarations or exhibits substantiating the accuracy of the calculations or the sufficiency of the amount awarded to Plaintiff." *Abreu*, 2023 WL 5051885, at *2. "Although the production of records is not a hard-and-fast requirement, the Court has an obligation to ensure a fair agreement, and to develop the record sufficiently to evaluate fairness." *Castillo*, 2025 WL 2945435, at *6. Relying on the aforementioned "contemporaneous time records," Defendants make factual assertions about the likelihood of Plaintiff proving her claims. (*See* Settlement Agreement Application 2.) Defendants assert that "the existence of these records creates a substantial hurdle for Plaintiff to overcome at trial," therefore there is substantial "volatility in what, if anything, Plaintiff could receive under the FLSA" creating "*significant* risk . . . that Plaintiff could end up with nothing in response to her FLSA claim." (*Id.* (emphasis added).) Defendants readily acknowledge that "Plaintiff disputes these records," (*id.*), but fail to include said records as supporting documentation.

The amount offered may very well be an appropriate assessment of each side's probability of success, but the Court lacks the information to conclude that the potential recovery

11

was reasonably calculated.  "In the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable."  *Nights of Cabiria*, 96 F. Supp. 3d at 177.  Therefore, the Parties must submit to the Court additional information correcting the deficiencies identified above.  "At a minimum," this submission should include "evidence as to . . . the bases of estimates of [P]laintiff[']s maximum possible recovery[ ] [and] the probability of [P]laintiff[']s success on the merits."  *Id.* at 176.

    5. Attorneys' Fees

    Under the FLSA, a successful plaintiff—including one who settles—is entitled to attorneys' fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)) (analyzing propriety of attorneys' fees).  The Parties represent that "Plaintiff's counsel is not seeking any attorneys' fees or costs in the Agreement as a result of the resolution of Plaintiff's FLSA claim." (Settlement Agreement Application 3.)  Accordingly, the Court need not analyze this factor.  *Cf. Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) ("[I]f attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs.").

### III.  Conclusion

For the reasons set forth above, the Parties' Application is denied without prejudice. The Parties are directed to resubmit their application with materials that would allow the court to evaluate the reasonableness of the settlement amount.  The materials should be submitted no later than two weeks from the date of this Order.

SO ORDERED.

Dated:    June 9, 2026
          White Plains, New York

KENNETH M. KARAS
United States District Judge

13